UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DANIEL LOPEZ,                                                              Case No. 16-10117 ta7

     Debtor.

NAATSHLID SHIRLEY and
LEO SHIRLEY,

     Plaintiffs,

v.                                                                       Adv. No. 16-1025 t

DANIEL LOPEZ,

     Defendant.

## OPINION

Before the Court is plaintiff's claim that defendant willfully and maliciously hit his car, resulting in a nondischargeable debt under 11 U.S.C. § 523(a)(6).[1] After trial on the merits and a review of the relevant law, the Court concludes that defendant's actions did not rise to the high standard required for § 523(a)(6) nondischargeability. The debt stemming from the collision therefore has been discharged.

### I.     FINDINGS OF FACT

At about 2:00 a.m. on March 29, 2006, defendant Daniel Lopez was driving his 1996 Chevrolet Tahoe north on Unser Blvd., on the west side of Albuquerque, New Mexico. As Lopez crossed over Interstate 40, plaintiff Naatshlid Shirley, driving a 1995 Subaru Impreza, left the freeway and merged onto Unser. At the time, road construction had reduced that portion of northbound Unser to one lane.

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.

What happened next is not clear. The two vehicles came close to each other after Shirley merged onto Unser. According to Lopez, the vehicles never collided or touched; he speculated that Shirley had trouble merging and concluded that Lopez had "cut him off." According to Shirley, on the other hand, Shirley tried to pass Lopez after the construction zone and the Tahoe collided with the Impreza's driver's side mirror. Based on photographs taken the day after the incident, the Court finds that likely no collision took place, or else if it did, the impact was so minor that Lopez did not notice.

In any event, by the time the vehicles stopped at the first stoplight north of I-40 (Ladera Drive NW), Shirley's Impreza was right behind Lopez's Tahoe.

When the light turned green and Lopez began driving, it became apparent to him that Shirley was following him. Lopez sped up and drove through various west side neighborhoods trying to lose Shirley, but his efforts were unsuccessful.

After some period of time,[2] Lopez pulled into a well-lit gas station and convenience store on Quail Road NW. Lopez drove around the gas pumps. Shirley did not pull in towards the pumps, but instead waited near the entrance. When Lopez then tried to leave the gas station, Shirley was partially blocking the entrance to prevent Lopez from leaving. In response, Lopez drove the Tahoe into the driver's side of the Impreza, knocking the smaller vehicle aside.

After the collision, Lopez left the scene and drove to his destination. He called the police from his car to report the incident, providing his first name and information about the collision. Lopez did not give his last name.[3]

---

[2] Lopez estimated about 20 minutes; Shirley about 8 minutes.
[3] Lopez testified that he had not been drinking that night. That is possible, but the Court finds that Lopez likely had been drinking, given the evidence. Either way, the outcome of this trial does not hinge on either party's consumption (or nonconsumption) of alcohol.

Shirley remained at the gas station because the Impreza was not drivable. It was severely dented behind the driver's door. The rear driver's side window was broken, and the rear wheel and axle on the passenger's side were bent. The driver's door would not open, so Shirley had to climb over to the passenger's side.

Shirley flagged down a passing police officer (Officer Sedillo), who could not assist him because he was on route to another call. Officers Storey and Martinez soon arrived at the gas station, however. While taking the police report, Officer Storey detected alcohol on Shirley's breath and administered a field sobriety test. Shirley admitted to drinking three beers. Officer Storey arrested Shirley on suspicion of DUI. A test administered at the police station showed his blood alcohol level was less than the legal limit of .08%, so the police released Shirley without charges.

As Officer Sedillo returned to the scene, he heard the police dispatcher report that a caller named Daniel had been in a collision after being chased by a teal Honda. The report coincided with Shirley's earlier description of the incident. Officers Sedillo, Storey, and Martinez compared notes and determined the caller was Daniel Lopez. Officer Storey prepared the police report, which included a supplemental narrative by Officer Sedillo.

Officer Storey's narrative states, in relevant part:

On [March 29, 2006] I responded to 5311 Quail Rd. NW in response to an accident that Officer Sedillo was flagged down at earlier. Upon arrival I contacted [Shirley] who stated that in the area of Unser and I-40 he had been involved in a slight accident with a green SUV…. [Shirley] stated that he followed the vehicle to get the license plate number. [Shirley] stated that he pulled into [the gas station] and the SUV struck the driver side of [Shirley's vehicle] causing disabling damage to the vehicle. The green SUV then left the scene. Officer Martinez had been dispatched to [a nearby area] for an accident where someone had been chased by a vehicle matching the description of [Shirley's vehicle]. Officer Martinez's story was in agreement with [Shirley's] story and that the caller [Lopez] stated he struck the vehicle in fear because he was being chased…

Officer Sedillo's narrative is similar:

> As I was getting ready to head back to Mr. Shirley at [the gas station], I heard dispatch advise Officer Martinez of an accident at Atrisco and St. Josephs [a nearby intersection]. The called advised he was being chased by someone in a teal Honda. He advised that he [illegible] had to crash into the teal vehicle to get him to quit chasing him….

Per the police report, the factors contributing to the collision were: (1) Lopez's failure to yield the right of way; (2) Shirley's alcohol consumption; and (3) both drivers' inattention. The police did not question Lopez about the collision.

The Impreza was uninsured at the time of the collision. Shirley's father had purchased the Impreza for $4,000 in 2003, and Shirley spent about $1,500 and several hundred hours modifying the car. After the collision, Shirley had the car towed to a repair shop. The mechanic determined it would cost more money to fix the Impreza than it was worth. Eventually, Shirley was forced to surrender the car to the repair shop because he could not afford to pay the storage fees.

On August 29, 2006, Plaintiffs filed a complaint in the Second Judicial District Court of New Mexico, civil no. CV 2006 06967, asserting that Lopez negligently, recklessly, or intentionally hit Shirley's vehicle. Plaintiffs served the summons and complaint on Lopez at his mother's address, which was the most recent mailing address provided by the MVD. Lopez testified that he did not receive actual notice of the lawsuit, so he never responded. Plaintiffs obtained a default judgment. At Plaintiffs' request, the Court set aside the default judgment and allowed Plaintiffs to amend the complaint. The amended complaint filed May 23, 2007 asserts the following:

> Plaintiff pulled into the station after [Defendant] and Defendant turned his vehicle around and negligently, recklessly or intentionally drove his vehicle directly into the Plaintiff's vehicle and rammed into it, disabling it from traveling further and causing a total loss of the vehicle due to property damage and injuring and causing emotional distress to Plaintiff…

> Defendant then left the scene … in violation of NMSA 66-7-202.
>
> In order to cover up his misconduct and avoid prosecution for his own unlawful activity, Defendant later called police and claimed that he struck Plaintiff's vehicle in fear because he was being chased. Police advised him to remain at his location where he made the call until they arrived, but Defendant then again left that location and has thus far failed to respond to requests and communications concerning the incident.
>
> The … unlawful, intentional, reckless, and wanton actions of the Defendant caused property damage to the vehicle owned by Leo Shirley, and personal injury and emotional distress in an amount to be determined …

Lopez did not respond to the amended complaint, which was again delivered to his mother's address. The state court entered a default on February 22, 2007 and reserved damages for a future hearing. By a final judgment entered September 11, 2007, the state court awarded $31,555 in compensatory damages, $100,000 in punitive damages, and $122.50 in costs. The finding supporting the punitive damage award states that "the actions of the Defendant were malicious, oppressive, grossly negligent and intentional…."

Plaintiffs filed a transcript of judgment on January 30, 2013. When Lopez failed to appear for a deposition in aid of collection on March 7, 2014, the state court issued a bench warrant for his arrest. Lopez was arrested in September 2015, which is when he first learned of any lawsuit or collection efforts following the collision.

Lopez filed a chapter 7 petition on January 24, 2016. Plaintiffs timely filed this nondischargeability action.

## II. DISCUSSION

### A. 11 U.S.C. § 523(a)(6): Willful and Malicious Injury.

Debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity" are excepted from the general discharge. 11 U.S.C. § 523(a)(6). Section 523(a)(6) requires proof of both a "willful act" and "malicious injury." *In re Moore*, 357

F.3d 1125, 1129 (10th Cir. 2004). The "willful" element requires an intentional act and an intended harm; an intentional act that leads to an unintended harm is not sufficient. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A "willful act" is therefore one in which the debtor "'desire[s] to cause the consequences of his act or ... believe[s] that the consequences are substantially certain to result from it.'" *Moore,* 357 F.3d at 1129 (quoting *In re Longley*, 235 B.R. 651, 657 (10th Cir. BAP 1999)).

For a debtor's actions to be malicious, they have to be intentional, wrongful, and done without justification or excuse. *In re Deerman*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012) (collecting cass); *In re Tinkler*, 311 B.R. 869, 880 (Bankr. D. Colo. 2004) ("the malice prong of 11 U.S.C. § 523(a)(6) is satisfied upon a showing the injury was inflicted without just cause or excuse"); *In re Nevarez,* 415 B.R. 540, 544 (Bankr. D.N.M. 2009) ("'malicious' requires that an intentional act be performed without justification or excuse") (quotations omitted).

The Tenth Circuit applies a subjective standard in determining a defendant's intent. *In re Englehart*, 2000 WL 1275614, at *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."). Evidence of the debtor's state of mind may be inferred from the surrounding circumstances. *In re Gordon*, 303 B.R. 645, 656 n. 2 (Bankr. D. Colo. 2003) (it is "absolutely permissible to infer … actual intent to cause injury from … evidentiary facts") (internal citations omitted).

B.   Preclusion Principles.

Plaintiffs assert the state court judgment establishes the debt is nondischargeable under principles of res judicata and/or collateral estoppel, also known respectively as claim preclusion and issue preclusion. The Court disagrees.

1. <u>Claim Preclusion</u>. Some courts hold that claim preclusion does not apply in § 523(a) actions. *See In re Walker*, 416 B.R. 449, 462 (Bankr. W.D.N.C. 2009) ("res judicata [claim preclusion] is inapplicable to a bankruptcy dischargeability proceeding[s]"); *In re Lucas*, 186 B.R. 67, 69 (Bankr. E.D. Va. 1995) (claim preclusion does not apply in dischargeability proceedings). These courts reason that nondischargeability claims are unique to the Bankruptcy Code, and the "same claim" requirement therefore cannot be satisfied. *Id.* Other courts hold claim preclusion is available to establish the existence and amount of a debt, but not its dischargeable nature. *See, e.g., In re Crespin,* 551 B.R. 886, 896-897 (Bankr. D.N.M. 2016) (default judgments are given "preclusive effect as to the claim on the debt, but not as to its dischargeability"). Either way, Plaintiffs must establish the "willful" and "malicious" elements of § 523(a).

2. <u>Issue Preclusion</u>. Bankruptcy courts look to state law to determine whether issue preclusion bars relitigation of an issue in an adversary proceeding. *In re Flanders,* 657 Fed. Appx. 808, 821 (10th Cir. 2016) (issue preclusion applies in bankruptcy cases); *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir.1997) ("the [federal] court is required to give … judgment the same preclusive effect it would be given in the courts of New Mexico"). Under New Mexico law, default judgments cannot form the basis for issue preclusion. *Blea v. Sandoval,* 761 P.2d 432, 435 (N.M. Ct. App. 1988) (a default judgment has no issue preclusion effect because the issues are not actually litigated); *In re Martinez,* 476 B.R. 627, 633 (Bankr. D.N.M. 2012) (citing and following *Blea*); *In re Beaver,* 437 B.R. 410, 411 (Bankr. D.N.M. 2010) (same). Plaintiffs therefore are not entitled to any benefit from issue preclusion.

C. <u>Application of § 523(a)(6)</u>.

The key questions are whether Lopez "willfully" and "maliciously" damaged Shirley's car. Lopez's intent is somewhat difficult to discern, given that the crash occurred eleven years ago, in

the heat of a stressful situation. Based on all facts and circumstances, and after weighing the credibility of each witness, the Court finds that Lopez did not act willfully. Lopez did not know, and could not know, what Shirley's intentions were, or whether he was armed. It was reasonable that Lopez became alarmed by Shirley's pursuit, particularly since he was unaware of any alleged collision on Unser Blvd. When cornered at the gas station, Lopez collided with Shirley's car in an effort to escape through the entrance and avoid being trapped. It was imprudent and dangerous for Shirley to have followed Lopez late at night rather than just reporting his license plate number to the police. Shirley should have appreciated that his actions would be interpreted as threatening and dangerous. It makes sense to the Court that, rather than getting out of his large vehicle and confronting Shirley on foot, Lopez's instinct was to stay in his vehicle and preserve his ability to drive away.

Further, even if Lopez intended to hit the Impreza to escape, as suggested by the police report, the Court finds and concludes that Lopez did not act maliciously. The last thing Lopez wanted was an encounter with Shirley or his car, as evidenced by 8-20 minute high-speed chase where Lopez attempted to shake Shirley off his tail. The collision was an act of last resort, to avoid being trapped in a potentially dangerous situation. There was no malice involved.

Plaintiff and Defendant were young men at the time of this incident. They are very fortunate nothing worse happened that night than damage to their vehicles. Like the parties, the Court wishes that the encounter had never happened. Nevertheless, Lopez's actions did not render his debt to Shirley nondischargeable.

### III. CONCLUSION

After hearing the parties' testimony and carefully studying the exhibits, the Court is convinced that the collision was not willful or malicious as defined by §523(a)(6). Lopez's debt

to Plaintiffs stemming from the collision was discharged by the order entered May 9, 2016 in Lopez's bankruptcy case (case no. 16-10117). A separate judgment will be entered.

_____
David T. Thuma
United States Bankruptcy Judge

Entered: February 2, 2017

Copies to:

Ray Twohig
8998 Rio Grande Blvd NW
Albuquerque, NM 87114-1308

James Clay Hume
P.O. Box 10627
Alameda, NM 87184-0627